390 S.E.2d 6

**BRENDA G.**

v.

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES, as Temporary Custodian of Cecil G., Jr.**

**No. 19400.**

Supreme Court of Appeals of West Virginia.

Feb. 9, 1990.

David Karr, Jr., Ravenswood, for Brenda G.

Regina Polk, West Virginia Dept. of Human Services, Ripley, for West Virginia Dept. of Human Services.

Lee Benford, III, Asst. Pros. Atty., Ripley.

BROTHERTON, Justice:

This case involves a writ for habeas corpus brought by the petitioner, Brenda G., the mother of the minor child, Cecil, Jr., age 11, who was temporarily placed in the custody of the Department of Human Services. He was then referred to the George Junior Republic Facility, a shelter and diagnostic unit in Pennsylvania.

Cecil, Jr. was taken into custody on August 4, 1989, after he was charged with arson of the dwelling of Harold Harless, breaking and entering with intent to commit a larceny at the Harless home, the theft of Mr. Harless' rifle, and unlawfully destroying, injuring, and defacing the personal property of Mr. Harless, including a 1975 Oldsmobile Delta 88 automobile, a 1981 Datsun station wagon, and four gallons of George Dickle whiskey. These events occurred on August 3, 1989.

On August 4, 1989, Cecil was transferred to the Jackson County Circuit Court after appearing before the court juvenile referee. On August 29, 1989, Judge Charles McCarty heard testimony with regard to the infant respondent's motion to be granted a noncustodial improvement period. Besides the felony offenses of arson and burglary, and the misdemeanor offense of larceny of the high-power rifle, the court noted that the infant respondent's father, Cecil G., Sr., recently had been arrested on an alcohol-related charge. After reviewing the record, the court found that

> this infant respondent has engaged in some alcohol abuse, that the infant respondent has attempted suicide, that the infant respondent has stolen and consumed wine and marijuana, that the infant respondent has admitted to setting a car on fire, stealing a gun, and shooting the windows out of a large truck commonly referred to as a "rig," that a stable home environment would be necessary for a noncustodial improvement period to be successful, and that the arrest of adult respondent, Cecil [Sr.], on an alcohol-related charge is not indicative of a stable home environment, from all of which the court does find and conclude there are compelling reasons to deny the infant respondent's motion for an improvement period, and it is accordingly, therefore ordered that the infant respondent's motion for an improvement period is hereby denied.

By order dated September 8, 1989, the infant respondent admitted the charge of breaking and entering in exchange for the dismissal of the other charges. The court then ordered that the care and custody of Cecil, Jr. be granted to the West Virginia Department of Human Services, which placed the respondent in the George Junior Republic shelter facility and diagnostic unit in Grove City, Pennsylvania, for a complete physical, psychiatric, psychological, and neurological examination and report.

Upon completion of that report, Cecil, Jr. was to be returned for further proceedings before the court.[1]

In November, 1989, the petitioner, Brenda G., filed this petition for a writ of habeas corpus, asking this Court to order the respondent to produce the minor child. The petitioner alleges the Department of Human Services illegally and improperly retained custody of the child beyond the thirty-day time period allowed by W.Va. Code § 49–5–13a (1986). The respondent denies the allegation, contending that W.Va.Code § 49–5–13a does not apply in this situation.

A review of the file reveals the child was scheduled to be produced by the Department of Human Services at a hearing to be held on January 19, 1990. The hearing was held on January 22 and 26, 1990. Thus, the habeas corpus issue is moot. We do, however, believe a clarification is necessary regarding the obligations owed by the Department of Human Services and the court system under W.Va.Code §§ 49–5–13 and 13a (1986).

Chapter 49 of the West Virginia Code sets out the steps necessary to process minors charged with offenses under the juvenile code. West Virginia Code § 49–5–11 (1986) requires that if, as in this case, the respondent child admits the allegations contained in the petition filed against him, "the court shall schedule the matter for disposition...."

The dispositional portion of the proceeding is contained in W.Va.Code § 49–5–13, which provides, in part, that:

> (a) In aid of disposition, the juvenile probation officer or state department worker assigned to the court shall, upon request of the court, make an investigation of the environment of the child and the alternative dispositions possible. The court, upon its own motion, or upon request of counsel, may order a psychological examination of the child. The report

---

1. In a second order dated September 8, 1989, the court found that the infant respondent, having "this date been adjudicated a delinquent child by separate order entered in this action, the court does ... hereby order that the temporary care, custody and control of the infant respondent be granted to the West Virginia Department of Human Services for placement in the shelter facility of the George Junior Republic Facility, Grove City, Pennsylvania."

... shall not be made available to the court until after the adjudicatory hearing. Unless waived, copies of the report shall be provided to counsel for the petitioner and counsel for the child no later than seventy-two hours prior to the dispositional hearing.

(b) Following the adjudication, the court shall conduct the dispositional proceeding, giving all parties an opportunity to be heard. In disposition, the court shall not be limited to the relief sought in the petition and shall give ... precedence to the least restrictive of the following alternatives consistent with the best interests and welfare of the public and the child....[2]

■ We disagree with the petitioners' allegation that the respondent has held the infant, Cecil, Jr., in violation of W.Va.Code § 49–5–13a (1986). Unlike § 49–5–13, the time limitation found in W.Va.Code § 49–5– 13a is triggered only when the court delivers the child to the custody of the commissioner of corrections, who then transfers the child to a juvenile diagnostic center for "examination, diagnosis, classification and a complete medical examination" for "a period not to exceed thirty days."[3]

In the case now before us, no such transfer to the custody of the commissioner of corrections was effected. The child was temporarily placed in the custody of the Department of Human Services for examination and psychiatric testing at the George Junior Republic Facility as an aid in the disposition of his case in accordance with W.Va.Code § 49–5–13. Therefore, the Department of Human Services did not violate W.Va.Code § 49–5–13 or 13a by keeping the child at the George Junior Republic Facility for an examination period which exceeded thirty days. The propriety of

---

2. West Virginia Code § 49–5–13(b) provides several alternatives for the court's consideration, including:

    (1) Dismiss the petition;

    (2) Refer the child and the child's parent or custodian to a community agency for needed assistance and dismiss the petition;

    (3) Upon a finding that the child is in need of extra-parental supervision (a) place the child under the supervision of a probation officer of the court or of the court of the county where the child has its usual place of abode, or other person while leaving the child in custody of his parent or custodian and (b) prescribe a program of treatment or therapy or limit the child's activities under terms which are reasonable and within the child's ability to perform;

    (4) Upon a finding that a parent or custodian is not willing or able to take custody of the child, that a child is not willing to reside in the custody of his parent or custodian, or that a parent or custodian cannot provide the necessary supervision and care of the child, the court may place the child in temporary foster care or temporarily commit the child to the state department or a child welfare agency;

    (5) Upon a finding that no less restrictive alternative would accomplish the requisite rehabilitation of the child, and upon an adjudication of delinquency pursuant to subdivision (1) [§ 49–1–4(1) ], section four, article one of this chapter, commit the child to an industrial home or correctional institution for children. Commitments shall not exceed the maximum term for which an adult could have been sentenced for the same offense, with discretion as to discharge to rest with the director of the institution, who may release the child and return him to the court for further disposition;

    (6) Upon an adjudication of delinquency pursuant to subsection (3) or (4) [§ 49–1–4(3) or (4) ], section four, article one of this chapter, and upon a finding that the child is so totally unmanageable, ungovernable and antisocial that the child is amenable to no treatment or restraint short of incarceration, commit the child to a rehabilitative facility devoted exclusively to the custody and rehabilitation of children adjudicated delinquent pursuant to said subsection (3) or (4). Commitments shall not exceed the maximum period of one year with discretion as to discharge to rest with the director of the institution, who may release the child and return him to the court for further disposition;

    \*    \*    \*    \*    \*    \*

3. W.Va.Code § 49–5–13a requires, in part:

    After adjudication as part of the dispositional proceeding, the court, upon its own motion, or upon request of counsel, may order the child to be delivered into the custody of the commissioner of corrections who shall cause such child to be forthwith transferred to a juvenile diagnostic center for a period not to exceed thirty days. During such period, such child shall undergo examination, diagnosis, classification, and a complete medical examination.... Within ten days following the termination of such examination, diagnosis and classification, the commissioner of corrections shall make or cause to be made a report to the court containing the results, findings, conclusions and recommendations of the commissioner with respect to such child.

that placement ends, however, when the report is completed.

◼ In order to effectuate the stated purpose of providing for the best interest and welfare of both the juvenile and the public, W.Va.Code § 49–5–13 permits the court to order the child placed in a facility for a reasonable period of time in order that examinations necessary to aid in the dispositional hearing can be performed. A reasonable period of time, however, is defined as only that period of time necessary to perform the testing permitted by W.Va. Code § 49–5–13. This Code section shall not be used as a method to either delay the dispositional proceedings or to attempt a referral or commitment of the child without the dispositional hearing required by statute. Consequently, it shall be the duty of the court and the juvenile officer to ensure that the child is returned for the dispositional hearing with minimal delay.

The dispositional hearing was held on January 22 and 26, 1990. After reviewing the report prepared by George Junior Republic and the home study report, Judge McCarty ordered that the least restrictive alternative would be to return the infant respondent to the temporary custody of the West Virginia Division of Health and Human Resources for placement at the George Junior Republic Special Needs Unit pursuant to W.Va.Code § 49–5–13(b)(4). As no evidence was presented by either party that the time taken by the George Junior Republic Facility to prepare the report was unreasonable in light of the nature of the examinations and the infant respondent's particular problems, we will not rule on that issue.

Writ denied.